UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-81452-CIV-Marra/Matthewman
(12-80226-CR-MARRA)

SONNY AUSTIN RAMDEO,

       Movant,

vs.

UNITED STATES OF AMERICA,

       Respondent.

_____/

FILED BY_____KJZ_____D.C.

Jul 1, 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PETITIONER'S SECOND AMENDED PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2255 [DE 28]

THIS CAUSE is before the Court upon the Petitioner/Movant, Sonny Austin Ramdeo's ("Movant") Second Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2255 ("the Petition") [DE 28]. This case has been referred to the undersigned for a Report and Recommendation. *See* DE 2. The Government has filed its response to the Petition [DE 35], and Movant has filed a reply [DE 43]. Movant has also filed supplemental authority [DE 47], to which the Government filed a response [DE 49], and Movant filed a reply [DE 50]. The Court has reviewed and carefully considered the Petition, the supplemental authority, the Government's responses, the Movant's replies, and all pertinent portions of the underlying criminal file and related civil files.

### I.     WHETHER MOVANT IS ENTITLED TO AN EVIDENTIARY HEARING

As a preliminary matter, the Court finds that an evidentiary hearing is not required in this

case. Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)). "However, 'if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.'" *Lewis v. United States,* No. 11-20631-CR, 2015 WL 13237415, at *3 (S.D. Fla. Aug. 20, 2015), *supplemented*, No. 11-20631-CR, 2015 WL 13237413 (S.D. Fla. Sept. 30, 2015), *report and recommendation adopted*, No. 15-23059-CIV, 2016 WL 8737355 (S.D. Fla. Mar. 14, 2016) (quoting *Schriro v. Landrigan*, 550 U.S. 465 (2007)); *see also Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002). Here, as explained further below, the files and records of the case do, in fact, conclusively show that Movant is entitled to no relief. Therefore, Movant is not entitled to an evidentiary hearing and no evidentiary hearing shall be scheduled.

Further, the Court FINDS and RECOMMENDS that Movant's Petition be DENIED in its entirety, as discussed in detail below.

## II.    BACKGROUND

Movant's criminal case has been quite litigious, with Movant having been represented by six different attorneys in the District Court and one appellate attorney on direct appeal in the United States Court of Appeals for the Eleventh Circuit. Movant has also at various times represented himself *pro se*, and he has filed a plethora of *pro se* motions and appeals. A brief history of the case is as follows.[1]

---

[1] Throughout this Report and Recommendation, the Court will refer to docket entries in the instant civil case with "Cv-DE" and will refer to docket entries in the underlying criminal case with "Cr-DE."

Movant was initially indicted over 7 ½ years ago on December 6, 2012 [Cr-DE 3] and was thereafter arrested in New York on December 12, 2012, pursuant to an arrest warrant issued in the criminal case [Cr-DE 14]. Movant had his initial appearance in this District on January 2, 2013 [Cr-DEs 8, 9] and was thereafter ordered held on pretrial detention [Cr-DEs 19, 20]. A grand jury returned a Superseding Indictment against Movant on or about April 11, 2013, for charges of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 1-3); money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 4-6); and money laundering, in violation of 18 U.S.C. § 1957(a) (Counts 7-9). [Cr-DE 44].

On October 1, 2013, Movant entered a guilty plea as to Counts 1 and 4. [Cr-DEs 70, 71]. Movant later moved to withdraw his guilty plea on multiple occasions, which requests were repeatedly denied. [Cr-DEs 93, 135, 141, 159, 166, 174, 180, 183, 193, 245, 246, 256, 257, 261, 262].

On July 9, 2015, Movant was sentenced to 240 months in prison, to be followed by three years of supervised release. [Cr-DE 268]. He was also ordered to pay restitution in the amount of $21,442,173.00 *Id.*

A Notice of Appeal from Movant's Judgment and Conviction was filed on July 10, 2015. [Cr-DE 269]. The United States Court of Appeals for the Eleventh Circuit ultimately affirmed the District Court's Judgment and Conviction. [Cr-DE 327]. *United States v. Ramdeo*, 682 F. App'x 751, 760 (11th Cir. 2017). The Supreme Court denied certiorari on October 17, 2017, in *Ramdeo v. United States*, 138 S. Ct. 367 (2017).

Movant also separately appealed the District Court's denial of his petition for writ of audita querela, and the United States Court of Appeals for the Eleventh Circuit affirmed the District Court. *Ramdeo v. United States*, 760 F. App'x 900 (11th Cir. 2019).

Movant filed his original Petition Under 18 U.S.C. § [2255] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Cv-DE 1] on October 25, 2018. He filed his Amended Petition [Cv-DE 28], which is the Petition at issue in this Report and Recommendation, on April 15, 2019. On May 23, 2019, United States Magistrate Judge Lisette M. Reid recused herself from this case, and this matter was reassigned to the undersigned United States Magistrate Judge. [Cv-DE 32].

### III.   MOVANT'S VARIOUS DEFENSE COUNSEL AND HIS *PRO SE* REPRESENTATION IN THIS CASE

Because Movant makes numerous claims of ineffective assistance of counsel in his Petition, the Court deems it necessary, as a preliminary matter, to discuss in detail Movant's constant changes of counsel in the underlying criminal case. Movant seemingly had conflicts with all of his many counsel, which resulted in Movant being represented by numerous court-appointed and privately-retained counsel in the District Court. The criminal docket reflects that, throughout this case, Movant repeatedly changed counsel, made accusations against various counsel, and even proceeded *pro se* for a period of time. Therefore, the Court deems it necessary to provide a timeline of Movant's representation.

#### a.   Initial Appointment of the Federal Public Defender

Movant was initially appointed the Federal Public Defender to represent him at his initial appearance in this District on January 2, 2013. [Cr-DEs 8, 9]. The Federal Public Defender represented Movant in this District from January 2, 2013 through February 5, 2013 [Cr-DEs 28, 29], including at Movant's Arraignment on the initial Indictment on January 2, 2013 [Cr-DE 12] and at his pretrial detention hearing on January 9, 2013 [Cr-DE 19].

The Federal Public Defender's initial representation of Movant lasted approximately one

month.

      b.   <u>Movant Retains Valentin Rodriguez, Jr. to Replace the Federal Public Defender</u>

On January 30, 2013, privately-retained defense counsel Valentin Rodriguez, Jr., filed a Notice of Appearance to replace the Federal Public Defender [Cr-DE 23], and the Federal Public Defender was discharged on February 5, 2013 [Cr-DEs 28, 29]. Mr. Rodriguez represented Movant from approximately January 30, 2013 through June 3, 2013, including at Movant's April 15, 2013 Arraignment on the Superseding Indictment [Cr-DE 49] and at Movant's April 22, 2013 hearing where Movant sought reconsideration of his pretrial detention [Cr-DEs 54, 57]. After the Court ordered Movant's continued pretrial detention on April 23, 2013 [Cr-DE 56], Movant retained three new defense counsel from one law firm to replace Mr. Rodriguez, and Mr. Rodriguez moved to withdraw. [Cr-DEs 58, 59].

Mr. Rodriguez represented Movant for approximately four months.

      c.   <u>Movant Retains Three Defense Counsel from the Law Firm of Funk, Szachacz & Diamond, LLC, to Replace Mr. Rodriguez</u>

New counsel from the Law Firm of Funk, Szachacz & Diamond, LLC, filed a Notice of Appearance on behalf of Movant in this case on May 13, 2013 [Cr-DE 59], along with a Stipulation for Substitution of Counsel [Cr-DEs 58, 59]. Thereafter, the Court entered its Order permitting Mr. Rodriguez to withdraw and allowing Movant to be represented by three privately retained counsel, Alan S. Diamond, Kepler B. Funk, and Keith F. Szachacz, of Funk, Szachacz & Diamond, LLC. [Cr-DE 67]. These defense counsel represented Movant from May 13, 2013, through December 4, 2013, with Mr. Diamond appearing on behalf of Movant at Movant's change of plea hearing held on October 1, 2013, where Movant pled guilty to Counts 1 and 4 of the Superseding Indictment [Cr-DEs 70, 71]. On November 8, 2013, Movant filed a motion for

appointment of counsel to replace his privately retained counsel [Cr-DE 75], and defense counsel moved to withdraw [Cr-DE 76]. On December 4, 2013, the Court granted both motions and re-appointed the Federal Public Defender to represent Movant. [Cr-DE 79].

Counsel from Funk, Szachacz & Diamond represented Movant for approximately 6 ½ months.

### d.   The Federal Public Defender Is Re-appointed to Represent Movant in Replacement of Funk, Szachacz & Diamond, LLC

After Movant sought to discharge Funk, Szachacz & Diamond, LLC, and requested appointed counsel, [Cr-DEs 75, 76], the Court granted Movant's request and re-appointed the Federal Public Defender to represent Movant on December 4, 2013 [Cr-DE 79]. On January 16, 2014, the Federal Public Defender moved to withdraw from representing Movant. [Cr-DE 83]. After a hearing, the Court granted the Federal Public Defender's motion to withdraw and appointed CJA Counsel David Pleasanton on January 28, 2014. [Cr-DE 87].

On this second appointment, the Federal Public Defender represented Movant for approximately 1 ½ months.

### e.   The Court Appoints CJA Counsel David Pleasanton to Replace the Federal Public Defender

CJA Counsel David Pleasanton was appointed on January 28, 2014, to represent Movant in replacement of the Federal Public Defender. [Cr-DE 87]. Approximately six months later, on July 24, 2014, Mr. Pleasanton moved to withdraw from representing Movant [Cr-DE 139], but the Court denied the motion to withdraw on August 1, 2014 [Cr-DE 144]. Approximately two weeks later, Mr. Pleasanton again moved to withdraw from representing Movant because Movant wanted to proceed *pro se*. [Cr-DE 146, 149, 150]. On September 2, 2014, after a hearing, the Court ordered that Movant would be permitted to proceed *pro se* with Mr. Pleasanton as stand-by counsel.

[Cr-DE 151].

During this first period of CJA counsel representation, Mr. Pleasanton represented Movant for approximately seven months and then became stand-by counsel.

    f.   Movant Represents Himself *Pro Se* with Mr. Pleasanton as Stand-by Counsel

On September 2, 2014, the Court permitted Movant to proceed *pro se* with Mr. Pleasanton as stand-by CJA counsel. [Cr-DE 151]. This arrangement lasted approximately three months, when, on the second day of his sentencing hearing on December 10, 2014, Movant decided that he no longer wanted to proceed *pro se*, and the Court re-appointed CJA Counsel David Pleasanton as Movant's defense counsel. [Cr-DE 244, p.2].

Movant proceeded on a *pro se* basis for approximately 3 months.

    g.   CJA Counsel David Pleasanton is Re-Appointed as Movant's Counsel

As noted above, on the second day of Movant's sentencing hearing on December 10, 2014, Movant stated he no longer wished to represent himself, and the Court then re-appointed Mr. Pleasanton as Movant's CJA counsel. [Cr-DE 244]. However, Movant continued to have conflicts with Mr. Pleasanton and sought the appointment of new counsel [Cr-DEs 190, 199] The Court advised Movant that he could proceed with Mr. Pleasanton as his counsel or proceed *pro se*, but that he would not be given another court appointed attorney. [Cr-DE 224, p. 2].

On February 17, 2015, Movant chose to proceed with Mr. Pleasanton as his counsel. [Cr-DE 209; 224, p. 2]. Mr. Pleasanton remained as counsel for Movant until the Court entered its Judgment and Conviction [Cr-DE 268], and Mr. Pleasanton filed a Notice of Appeal for Movant on July 10, 2015 [Cr-DE 269]. However, during the time period that Mr. Pleasanton represented Movant, the Movant repeatedly filed *pro se* motions. *See, e.g.*, Cr-DEs  242, 243, 244, 256, 260, 261. Thereafter, on July 13, 2015, the Court permitted Mr. Pleasanton to withdraw and appointed

Richard Rosenbaum as CJA Appellate counsel for Movant. [CR-DE 270].

During this second period of CJA counsel representation, Mr. Pleasanton represented Movant for approximately seven months.

h.   Appellate CJA Counsel Richard L. Rosenbaum

On July 13, 2015, the District Court appointed Richard L. Rosenbaum to represent Movant on his direct appeal in Eleventh Circuit case number 15-13095 and permitted CJA counsel David Pleasanton to withdraw from further representation of Movant. [Cr-DE 270]. Mr. Rosenbaum represented Movant throughout his direct appeal before the Eleventh Circuit.

## IV.   SUMMARY OF THE PARTIES' ARGUMENTS IN THEIR PAPERS

In his Petition, Movant asserts twelve separate "Grounds for Relief." [Cv-DE 28]. In summary, he argues, *inter alia*, that he did not knowingly and voluntarily enter into a guilty plea for various reasons; that the Government breached the plea agreement; that his several counsel's performance was deficient at various times including when Movant changed his plea, at the time of sentencing, and on direct appeal; that there were *Brady* violations committed by the Government; that he was denied due process; and that his rights were violated at the sentencing hearing. *Id.* Each of Movant's grounds for relief is discussed in more detail below.

The Government argues in response that, "[a]s a result of the decision of the Court of Appeals on direct appeal, all of the issues that attempt to resurrect a means to overturn his guilty plea should be denied." [Cv-DE 35, p. 6]. The Government next contends that the issue of "whether several sentencing enhancements, and loss and restitution determinations were properly applied" were "decided on direct appeal." *Id.* Thus, according to the Government, Movant's claims are procedurally barred because Movant did not raise them on direct appeal and has not shown good cause and prejudice. *Id.* at p. 7. The Government also maintains that Movant did not

receive ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at pp. 9-17. Finally, the Government contends that Movant's due process rights were not violated. *Id.* at pp. 17-19.

Attached to the Government's Response are the Government's brief for Movant's Eleventh Circuit case number 15-13095 [Cv-DE 35-1], the Eleventh Circuit opinion in case number 15-13095 [Cv-DE 35-2], the denial of the petition for a writ of certiorari [Cv-DE 35-3], and the Eleventh Circuit opinion in case number 17-15321 [Cv-DE 35-4].

In Movant's Reply[2], he argues that he has cause for his failure to raise the instant claims on direct appeal and that he can establish prejudice. [Cv-DE 43, pp. 2-3]. He then opposes the Government's arguments as to each of his claims in the Petition. *Id.* at pp. 5-17.

Movant has also filed supplemental authority with leave of court. *See* Cv-DEs 47, 48. The supplemental authority pertains to the issue of whether the "Court used false information to determine both the loss and restitution resulting in an unreasonable and illegal sentence." [Cv-DE 47, p. 3]. Movant maintains that he was "sentenced on materially false information" and that "the plea he entered relied on that false information based on his attorney's failure to properly investigate the facts and review the evidence reasonably expected of any attorney." *Id.* at p. 4.

The Government then filed a Response to Supplement with Additional Authority [Cv-DE 49]. The Government asserts that the "issues related to loss calculations and restitution were litigated during the sentencing hearing and raised on direct appeal" and that "[t]o the extent that Movant has added additional grounds in this supplemental filing, they are untimely for the

---

[2] In his Reply, Movant also requests a hearing and contends that "newly presented evidence" will show that he did not perjure himself, that he received ineffective assistance of counsel, that his due process rights were violated, and that his claims are not barred on any procedural grounds because "they fall into the exceptions." [Cv-DE 43, p. 1]. The undersigned has carefully reviewed the Petition and Reply and has carefully considered each of Movant's arguments. Although Movant makes a vague claim of newly discovered evidence, he has not produced any newly discovered evidence and has not sufficiently identified any truly relevant newly discovered evidence.

9

purposes of [a §2255 petition] if the amended matter does not relate back to the original motion and instead raises a new ground as to the petition." *Id.* at p. 1.

In reply, Movant maintains that the "loss and restitution" issue had already been incorporated into his arguments in the Petition, so it is not procedurally barred, and that the Government's substantive arguments on the issue are without merit. [Cv-DE 50, pp. 1-3].

## V.   MOVANT'S VAGUE "SHOTGUN" INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS AGAINST NUMEROUS COUNSEL

Before individually addressing each of Movant's 12 Grounds for Relief, the Court first deems it necessary to address the Movant's numerous ineffective assistance of counsel claims. Of the 12 Grounds for Relief asserted by Movant in his Petition [Cv-DE 28], nine of those Grounds for Relief assert some sort of ineffectiveness of counsel claim. Specifically, Grounds for Relief No. 2, 3, 4, 6, 8, 9, 10, 11 and 12 assert, at least in part, ineffectiveness of counsel claims. [Cv-DE 28, pp. 2-20]. However, Movant's Petition is often vague and unclear as to which of his many counsel he is complaining about in each specific Ground for Relief. For example, Movant repeatedly refers to "trial counsel" having allegedly been ineffective, despite the fact that he never proceeded to trial but instead pled guilty. Nor does Movant define who he means by "trial counsel" at any point in his Petition. Additionally, in certain of his Grounds for Relief, he refers generically to "counsel" without naming the specific counsel he is complaining about.

Later in his Petition, Movant does provide a list of attorneys who he asserts represented him at various stages of his case, [Cv-DE 28, pp. 19-20]. However, this list is inaccurate in part. For example, Movant states that he had no counsel at his "Preliminary Hearing." [Cv-DE 28, p. 19]. However, because Movant was indicted on December 6, 2012 [Cr-DE 3] prior to his arrest, he was not entitled to a preliminary hearing and never even had a preliminary hearing.

Further, Movant's list states that the Federal Public Defender represented him solely at his "Arraignment." [Cv-DE 28, p. 19]. However, the docket reflects that the Federal Public Defender represented Movant at his initial appearance and arraignment on January 2, 2013 [Cr-DEs 8, 9] and at his detention hearing held on January 9, 2013 [Cr-DE 19], and that the FPD continued to represent Movant until being discharged on February 5, 2013. [Cr-DE 29]. Thereafter, the FPD was re-appointed to represent Movant on December 4, 2013 [CR-DE 79], after he had entered his guilty plea and was pending sentencing, until the FPD was discharged a second time on January 24, 2014. [Cr-DE 86].

Movant's Petition then categorizes his numerous other counsel as "Plea" counsel, "Kepler Funk, Alan Diamond – Funk, Szachacz & Diamond LLC" [Cv-DE 28, p. 19]; "Prior to Plea" counsel, Valentin Rodriguez [Cv-DE 28, p. 20]; "Sentencing/Plea Withdrawal" counsel, David F. Pleasanton [Cv-DE 28, p. 20]; and "Appeal" counsel, Richard L. Rosenbaum [Cv-DE 28, p. 20]. But many of these labels Movant has affixed to his attorneys in his Petition are not utilized by Movant in his specific Grounds for Relief.

Further, Movant's Reply first generally asserts that "Ramdeo's Attorney's Were Ineffective." [Cv-DE 43, p. 7]. Then, Movant specifically attacks "Plea Withdrawal Hearing Counsel" [Cv-DE 43, p. 7]; "Adler" [Cv-DE 43, pp. 7-8]; "Diamond" [Cv-DE 43, p. 8]; "Post-Plea Counsel" [Cv-DE 43, p.8]; "Rodriguez" [Cv-DE 43, p. 9]; "Plea Counsel" [Cv-DE 43, pp. 10-11]; and "Post-Plea Counsel" [Cv-DE 43, pp. 8-9]. Also, Movant often combines and jumbles his ineffectiveness of counsel claims with claims against the Government, the Court, the Probation Officer, and others. In sum, both Movant's Petition and his Reply assert ineffective assistance of counsel claims in a vague, confusing, shotgun approach. This has made it unnecessarily difficult and time-consuming for the Court to decipher and analyze Petitioner's ineffectiveness claims.

11

The Court notes that "[i]neffective assistance claims which are not plead sufficiently may be summarily dismissed without an evidentiary hearing." *Magluta v. United States*, No. 10-21345. CIV, 2011 WL 7306117, at *6 (S.D. Fla. Aug. 3, 2011), *report and recommendation adopted in part*, No. 10-21345-CIV, 2012 WL 488078 (S.D. Fla. Feb. 14, 2012), *aff'd*, 660 F. App'x 803 (11th Cir. 2016). It is clear to the undersigned that Movant's ineffective assistance claims are not properly pled. To the extent Movant has failed to sufficiently plead his ineffective assistance claims, and to the extent that Movant has failed to specifically and clearly identify against which of his many attorneys he is asserting his various ineffective assistance of counsel claims, such claims can be summarily denied. However, the Court has still endeavored to carefully address each of Movant's nine ineffective assistance of counsel claims despite the vagueness of his hodgepodge of allegations.

## VI.   DISCUSSION AND ANALYSIS

The Court now specifically addresses each of Movant's twelve grounds for relief.

a.   Ground 1: Whether the Government Breached the Plea Agreement by Failing to Recommend a One-Level Reduction for Movant Entering into a Timely Plea and Whether Movant Knowingly and Voluntarily Entered His Guilty Plea

Movant's first argument is that he was induced to accept the guilty plea due to the Government's statement that, if he did not plead that very day, he was not going to receive the one-level reduction for timely acceptance. [Cv-DE 28, p. 2]. However, according to Movant, the Government later failed to make the recommendation for timely acceptance at his sentencing. *Id.*

In response, the Government argues that Movant should have raised this issue on direct appeal when he raised the issue of "denial of acceptance of responsibility" and that Movant has not established cause and prejudice. [Cv-DE 35, p. 8]. The Government further contends that the one-point reduction under §3E1(b) was unavailable for two reasons: "failure to have 3E1.1(a)

applied and violation of the terms of the plea agreement at paragraph 6 when he obstructed justice by committing perjury." *Id.*

In reply, Movant argues that his reasonable understanding of the promise made by the Government is controlling. [Cv-DE 43, p. 5]. He also represents that "[w]hen the promise was made, the Government made no references to any conditions or requirements." *Id.* According to Movant, "because Ramdeo's reasonable understanding of the promise was not on the record," neither the District Court nor the Court of Appeals addressed the issue. *Id.* He next maintains that his argument on this point has not been waived because the District Court refused to address the issue of Movant's reasonable understanding of the promise, and the Eleventh Circuit refused to address the issue on appeal. *Id.* Finally, Movant makes a blanket argument in his Reply that he has established cause for bringing the claim in his Petition because certain facts and evidence were not part of the record for direct appeal, and he has established prejudice by pleading a fundamental defect in his sentence.[3] *Id.* at pp. 1-4.

The Court has carefully considered each of Movant's and the Government's arguments. First, Movant claims that, in order to induce him to accept a guilty plea, the Government made the following statement: "if he does not plead today, he is not going to get the one level reduction for timely acceptance." [Cv-DE 28, p. 2]. However, Movant did not state where in the record the Government made this statement. Further, the undersigned cannot find this exact statement anywhere in the record. Nor has Movant cited to any specific document in the record. Thus, there is no support in the record for his position. Regardless, Movant's argument in this respect fails due to the Court's analysis below which establishes that, for several reasons, he was not entitled to any

---

[3] The Court has considered, and rejected, Movant's cause and prejudice arguments as they apply to each of his 12 contentions set forth in his Petition.

reduction whatsoever for his purported acceptance of responsibility.

Second, the Government argues that it was not required to make the sentencing recommendation because Movant committed perjury. Paragraph 6 of the plea agreement [Cr-DE 71, p. 3] states in relevant part that the Government would recommend at sentencing that the Court "reduce by three levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility." However, the plea agreement goes on to state that the Government would

> not be required to make this sentencing recommendation of the defendant: (1) fails or refuses to make full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering this plead agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violation any term of release, or making false statements or misrepresentations to any governmental entity or official.

*Id.* Furthermore, paragraph 7 of the plea agreement states in relevant part that Defendant "is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from…this Office…is a prediction, not a promise, and is not binding on this Office, the probation office or the Court." *Id.* at pp. 3-4.

During the sentencing hearing, the District Judge stated, "I'm still convinced that [Movant] perjured himself during the [motion to withdraw guilty plea] hearing for purposes of attempting to influence my decision on the motion to set aside his guilty plea. And those representations or that testimony was false, and it was material to the Court's determination and, therefore, that is a basis for obstruction." [Cr-DE 285, p. 221]. The Court also found that Movant's "testimony regarding the existence of this contract that mysteriously appeared was also false and perjurious and was

intended to mislead the Court regarding a material matter before Judge Brannon; and, for that additional reason, I think obstruction is warranted in this case." *Id.* The Court then denied Movant an acceptance of responsibility reduction because "obstruction ordinarily indicates that the defendant has not accepted responsibilities for his criminal conduct." *Id.* at p. 222. Given the wording of the plea agreement and the District Judge's findings, the Court finds that the Government was not required to make the sentencing recommendation. Movant was not entitled to any acceptance of responsibility whatsoever due to his perjury and obstruction of justice which is amply supported by the record.

Third, the Government argues that it was not required to make the sentencing recommendation because §3E1.1(a) was not applied. Section 3E1.1(b) of the Federal Sentencing Guidelines states that a defendant must qualify for a decrease under §3E1.1(a) in order for section (b) to apply, and, in his criminal case, Movant did not qualify under section (a). [Cr-DE 285, p. 222]. This argument is clearly supported by the record. The Court finds that the Government was not required to make the sentencing recommendation under 3E1.1(b) because Movant failed to qualify for acceptance of responsibility under 3E1.1(a). It is basic logic and common sense that, since Movant did not qualify for the two-point reduction under 3E1.1(a), he was clearly not entitled to the additional one-point reduction under 3E1.1(b).

Fourth, Movant claims that he understood the Government's promise that it would recommend a one-level reduction of Movant's sentence for acceptance of responsibility to mean that there were no exceptions or conditions to this "inducement." Movant's argument that his "reasonable understanding" of the alleged promise made by the government is "controlling" is patently frivolous and is rejected. Movant's supposed understanding of the Government's alleged promise or statement is defied by the very plain language of the plea agreement. Here, Movant

simply has not met his burden of proving facts showing a breach of a plea agreement by a preponderance of the evidence. *See Iacullo v. United States*, No. 09-61928-CIV, 2010 WL 4722479, at *3 (S.D. Fla. Sept. 17, 2010), *report and recommendation adopted,* No. 09-61928-CIV, 2010 WL 4818383 (S.D. Fla. Nov. 15, 2010), *aff'd,* 463 F. App'x 896 (11th Cir. 2012). The plea agreement, which Movant did review and sign [Cr-DE 71], contained explicit conditions and restrictions. *See Ware v. United States*, No. 09-60185-CIV, 2009 WL 2567023, at *2 (S.D. Fla. May 14, 2009) ("[T]he Plea Agreement is explicit that the United States Attorney had discretion whether or not to move for a downward departure. Given the language of the Plea Agreement, Movant falls far short of establishing a clear breach of the Plea Agreement required for a § 2255 movant to qualify for relief."). The Court finds that there was no breach of the plea agreement by the Government.

  b.  <u>Ground 2: Whether "Trial Counsel" Provided Ineffective Assistance During the Pre-Appeal,<br>Pre-Sentencing Stage</u>

In Ground 2, Movant vaguely attacks his "trial counsel," "pre-appeal" counsel, "pre-sentencing" counsel, and "defense attorneys." According to Movant, after he tried to withdraw his plea, "defense counsel discovered a considerable amount of exculpatory evidence that prior counsel had overlooked." [Cv-DE 28, p. 3]. This evidence allegedly established that the "tax liability which was abated was not the result[ ] of Mr. Ramdeo but of the supposed victim" and that "certain tax transfers were explicitly for fees as opposed to tax deposits." *Id.* Movant asserts that his "defense attorneys" were ineffective in reviewing the Government's evidence and that the Government "misrepresented the extent of it's [sic] disclosure." *Id.* Movant further argues that, had the District Court known about these issues, it would have found a "fair and just" reason for allowing Movant to withdraw his guilty plea. *Id.*

16

The Government responds that issues previously raised, including those surrounding Movant's attempt to withdraw his guilty plea, are procedurally barred and that "an issue previously raised cannot be cloaked in such a claim of ineffective assistance of counsel merely to side-step a procedural bar to revisiting an issue." [Cv-DE 35, p. 5]. According to the Government, Movant "does not point to any specific testimony or document to support his contention that the attorneys had failed to review discovery materials prior to the entry of his plea. In fact, when movant entered his guilty plea, he swore under oath that counsel had done everything he could to defend movant and had done everything that Ramdeo believe[d] was required to defend him." *Id.* at p. 12.

In reply, Movant again argues that his counsel did not review the discovery, alleges that there were material misrepresentations in the factual proffer, and alleges that certain discovery is missing. [Cv-DE 43, p. 8].

To the extent it relates to his ineffectiveness of counsel claims, the Court notes that the Eleventh Circuit already denied Movant's appeal and affirmed the District Court's denial of Movant's motion to withdraw his guilty plea. The Eleventh Circuit determined that

> the district court did not abuse its discretion in denying Mr. Ramdeo's motion to withdraw his plea. The district court applied the *Buckles* factors and assessed Mr. Ramdeo's motion in detail, providing him with an in-depth hearing on his motion after having had already provided him with time at his change of plea hearing to confer with his attorney about his decision to plead guilty. As Mr. Ramdeo recognizes, he never indicated to the district court that did not want to move forward with the guilty plea. *See* Appellant's Br. at 32 ("Sonny Ramdeo did not indicate at any time during the plea colloquy that he did not want to proceed.").
>
> Moreover, there is a strong presumption that the statements made by Mr. Ramdeo under oath at the plea colloquy are true. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). The testimony from the change of plea hearing supports the district court's conclusion that Mr. Ramdeo received close assistance during the plea process and that he entered into the plea agreement knowingly and voluntarily. We must defer to the district court's credibility findings, and given the district court's strong opinion on Mr. Ramdeo's testimony regarding his attorneys' performance (e.g., that it consisted of "blatant lies" and was "false and

misleading") and without more from Mr. Ramdeo, we affirm the district court's denial of Mr. Ramdeo's motion.

We note that Mr. Ramdeo was before the district court on multiple occasions and granted leave to change counsel numerous times. The district court "is in the best position to know the effect the withdrawal had on its resources," *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984), and we do not find a reason to disagree with the district court's assessment that enough judicial resources had been spent in this case. Finally, any failure by the government to show prejudice is not outweighed by the other factors, which indicate that the district court did not err in denying the motion to withdraw the guilty plea.

*Ramdeo*, 682 F. App'x at 757–58.

To the extent that Movant accuses the Government of misrepresenting the extent of its disclosure of documents, the Court cannot now reconsider the Eleventh Circuit's decision on this issue. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255."). Moreover, Movant cannot overcome this procedural bar because he fails to establish cause for the denial of his motion to withdraw guilty plea resulting from the Government's alleged misrepresentation. Movant has not sufficiently tied the Government's alleged misrepresentations to the District Court's decision to deny his motion to withdraw his guilty plea.

As to Movant's claims of ineffective assistance of counsel, the applicable law is as follows. "In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. Under the 'performance' prong, the defendant must show that counsel's performance 'fell below an objective standard of reasonableness.'" *King v. U.S.*, 250 Fed.Appx. 930, 932 (11th Cir. 2007) (citing *Strickland*, 466 U.S. at 688.) "Under the 'prejudice' prong, the defendant must show that counsel's deficient performance actually prejudiced the defendant and that, "but for the attorney's error, the outcome

18

of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). The burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable. *See Strickland,* 466 U.S. at 688. The petitioner must establish that particular and identified acts or omissions of counsel "were outside the wide range of professionally competent assistance." *Chandler v. United States*, 218 F.3d 1305, 1313–14 (11th Cir. 2000) (quoting *Burger v. Kemp,* 483 U.S. 776, 794 (1987); *see also Strickland,* 466 U.S. at 686 (stating that petitioner must show "counsel's representation fell below an objective standard of reasonableness", which means that counsel's performance was unreasonable "under prevailing professional norms ... considering all of the circumstances"). During plea negotiations defendants are "entitled to the effective assistance of competent counsel." *McMann v. Richardson,* 397 U.S. 759, 771 (1970). The *Strickland* standard applies to "challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. When assessing a lawyer's performance, "[c]ourts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Chandler,* 218 F.3d at 1314 (11th Cir. 2000). When assessing ineffective assistance of counsel claims, the court's role is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within the wide range of professionally competent assistance." *Van Poyck v. Florida Dept. of Corrections,* 290 F.3d 1318, 1322 (11th Cir.2002) (quoting *Strickland,* 466 U.S.

at 690 (internal quotation marks omitted)). "Intensive scrutiny and second-guessing of attorney performance are not permitted." *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994).

In light of this standard, Movant cannot establish ineffective assistance of counsel. First, Movant vaguely refers to his "trial counsel" and "attorneys" in the "pre-appeal, pre-sentencing phase." [Cv-DE 28, p. 2]. However, a review of Section III of this Report and Recommendation establishes that Movant was represented by six attorneys—and proceeded *pro se*—during the pre-appeal, pre-sentencing phase. Movant's vague allegations of the ineffectiveness of his defense counsel wholly fails. Movant points to absolutely nothing in the record establishing that any of his many attorneys were ineffective. Movant has neither established that any of his defense counsel's performance fell below an objective standard of reasonableness or that he was actually prejudiced. He simply makes vague allegations about the effect that certain documents might have had during his hearing on his motion to withdraw guilty plea. Further, this Court's careful review of the record establishes that Movant received effective assistance of counsel at all stages of his prosecution.

c.   Ground 3: Whether "Trial Counsel" or the Government Induced Movant to Enter a Guilty Plea Based on Affirmative Misrepresentations

In Ground 3, Movant attacks both his counsel and the Government for making misrepresentations which induced him to enter a guilty plea. As to his ineffective assistance of counsel assertion, Movant's Petition generically attacks his "trial counsel" and "his counsel" without specifically naming the allegedly ineffective counsel. This requires the Court to attempt to determine which counsel Movant is referring to in Ground 3. Since Movant's argument here relates to his guilty plea, the Court will assume that Movant is referring to Alan Diamond (the attorney who represented Movant at the change of plea hearing) and Mr. Diamond's law firm, Funk, Szachacz & Diamond, LLC. Movant claims such counsel either "affirmatively

misrepresented" to Movant that he was trying to obtain certain records which Movant emphasized were important to his case, or trial counsel "so misunderstood the evidence as to constitute per se deficient performance." [Cv-DE 28, p. 4]. Movant further asserts that, because of his attorney's deficient performance, he should be permitted to vacate his guilty plea. *Id.*

  Movant next argues that his guilty plea "is also constitutionally void and involuntarily [sic] in character and nature because of egregiously impermissive [sic] conduct by government agents which induced the decision to plead guilty." *Id.* Moreover, Movant alleges that the Government violated *Brady v. Maryland*, 383 U.S. 83 (1963), by failing to turn over to defense counsel all material evidence. *Id.*

In response, the Government argues that Movant should have raised this issue on direct appeal and he has not established cause or prejudice. [Cv-DE 35, p. 8]. The Government also points out that Movant never alleged any *Brady* violations during the pendency of his criminal case. *Id.* at p. 13. It contends that Movant actually argues that he did not personally get the discovery materials from his attorneys or that he lost the materials and "not that the materials were kept from or not obtained by his attorneys." *Id.* The Government maintains that this not a basis for the finding of a *Brady* violation. *Id.* It also explains that it could not produce to Movant complete accounting records related to the companies at issue because it did not have them in its possession, custody, or control. *Id.* at p. 14.

In reply, Movant argues that the Government withheld IRS transcripts, bank statements, and other documents prior to his guilty plea. [Cv-DE 43, p. 13]. He asserts that the Government's representation that it made discovery available does not satisfy *Brady* requirements. *Id.*

The Court has closely considered Movant's arguments but finds them to be without merit for many of the same reasons stated above in Section VI(b) of this Report and Recommendation.

The record does not reflect that Movant's counsel ineffectively represented him. In fact, the record reflects that Movant's counsel represented him effectively at all stages of Movant's prosecution.

Movant's claim is also procedurally barred because he has not shown sufficient cause why the claim was not raised on direct appeal, when several other issues regarding the entry of his guilty plea and his motion to withdraw the guilty plea were raised, and Movant has not established prejudice. Furthermore, to the extent he alleges ineffective assistance of counsel, Movant has not met his burden under *Strickland*. Moreover, Movant's claim that his counsel or the Government induced him to plead guilty based on material misrepresentations is vague, meritless, and without support.

d. Ground 4: Whether Movant's Due Process Rights Were Violated When Both Probation and "Trial Counsel" Allegedly Failed to Advise the Court of Guidelines Changes that Had a Reasonable Probability of Impacting Movant's Sentence

In Ground 4, Movant attacks both his "trial counsel" and the Probation Officer because they allegedly failed to advise the Court of certain upcoming sentencing guideline changes. Movant's sentencing was held on December 3 and 10, 2014, and then on July 9, 2015, after Movant moved repeatedly to continue it. [Cr-DEs 176, 182, 266]. Movant represents that Amendment 792 to 2B1.1(b)(10)(c), with an effective date of November 1, 2015, "made a substantive change to sophisticated means enhancement." [Cv-DE 28, p. 5]. He asserts that his "trial counsel" or "counsel" and U.S. Probation had a duty to notify the District Judge of the changes to the sentencing guidelines and the changes' impact on Movant's sentence. *Id.* at pp. 5-6. According to Movant, had the District Judge understood that the amendment to the guidelines changed the "basis for calculating loss, the victim table and the application of sophisticated means," "there is a more than a reasonable probability that the court would have adopted the information and granted a variance under 3553 similar to the 2 level for loss." *Id.* at p. 6. Movant

22

requests that his sentence be vacated. *Id.*

In response, the Government argues that sentencing issues were already considered on direct appeal, so Movant is procedurally barred from raising sentencing issues here. [Cv-DE 35, p. 5]. The Government also contends that the memorandum in aid of sentencing drafted and submitted by Movant's counsel addressed the forthcoming guidelines amendment, that counsel addressed the issue of the upcoming amendment to the guidelines prior to the imposition of the sentence, and the District Judge recognized the amendment when sentencing Movant. *Id.* at p. 16.

As an initial matter, the Court notes that Movant refers in this argument to "counsel" and "trial counsel," but he does not specifically state the name of the allegedly ineffective counsel. In reviewing this argument, it appears Movant is attacking defense counsel who represented him at the portion of his sentencing hearing where Movant was not proceeding *pro se*. This would be CJA Counsel David Pleasanton. However, Movant chose to proceed *pro se* prior to his sentencing and for part of his sentencing, from September 2, 2014, through December 10, 2014, and, therefore, he is responsible for any alleged ineffectiveness he claims while he represented himself. On the second day of sentencing, as noted above in Section III, Movant told the District Judge that he no longer wished to represent himself, and CJA Counsel David Pleasanton was re-appointed to represent Movant. Therefore, it appears that Movant is directing this assertion of ineffectiveness to Mr. Pleasanton for the period of time when Mr. Pleasanton represented Movant regarding sentencing.

After reviewing Movant's claim in this section, the Court finds that this claim is procedurally barred as Movant already raised his various sentencing issues before the Eleventh Circuit, and Movant has failed to establish cause or prejudice. *See Ramdeo*, 682 F. App'x at 758-60.

Next, even though it is unnecessary to reach the merits on this issue, the Court notes that, in Movant's Sentencing Memorandum [Cr-DE 265, p. 12], there is a whole section entitled "Amended Guidelines," in which defense counsel (CJA Counsel David Pleasanton) explained the effects of the upcoming amendment to the District Court. This contradicts Movant's argument to the contrary.

Further, at Movant's July 9, 2015 sentencing hearing, defense counsel specifically requested that the District Judge take note of the upcoming amendment to the guidelines and either continue the sentencing to November 1, 2015, or "treat it as a variance." [Cr-DE 285, p. 206]. The District Judge later stated "[s]o as far as the issue of the sentencing guideline amendment, I can take that into consideration under 3553, but I'm not going to make an actual guideline adjustment for that potential sentence—amendment to the guideline." *Id.* at p. 223. Finally, when announcing Movant's sentence, the District Judge specifically stated, "in view of…the sentencing commission's consideration of amending the guidelines to lower them for these types of crimes…," showing that the District Judge was aware of the forthcoming amendment and took it into consideration at sentencing. And, the Court ultimately found that a sentence below the guideline range was sufficient. *Id.* at p. 285. Thus, the District Judge obviously was fully aware of the upcoming guideline amendment and did take the guideline amendment into consideration during Movant's sentencing. Obviously, Movant's counsel at sentencing was not ineffective because counsel made the District Judge aware of the upcoming guideline change and the District Judge noted those upcoming change. Nor did the Probation Officer fail to advise the District Judge of the upcoming sentencing guideline amendment.

e.   Ground 5: Whether the Government Prosecutor Breached the Plea Agreement and Committed Misconduct by Advocating Against Stipulated Facts in Order to Enhance Movant's Sentence

Movant maintains that his due process rights were violated because the Government violated the terms of his plea agreement. [Cv-DE 28, p. 6]. According to Movant, the Government agreed that "it was not until Spring of 2011 that Ramdeo made a recommendation to the auditors to get an outside company to handle the payroll taxes, yet [the Government] advocated for relevant conduct starting in October, 2010 resulting in 1 criminal history point and other relevant conduct which was not what Mr. Ramdeo reasonably understood when he took the plea." *Id.*

In response, the Government argues that Movant should have raised this issue on direct appeal and that he has not established cause and prejudice for failing to do so. [Cv-DE 35, p. 8]. The Government also argues that Movant's contention that "the United States argued matters outside the Stipulated Factual Proffer in Support of the Plea Agreement by contending that the proffer bound the government to agree that Ramdeo, through his fictitious company was entitled to fees for services" is without any merit or supporting evidence. *Id.* The Government maintains that paragraph 5 of the plea agreement stated that the Government was permitted to prove all of the information about the offenses whether charged or not and whether one of the counts of conviction or not. *Id.* at p. 9.

In reply, Movant argues that he "never saw the information that the factual proffer supported, however it was used as a basis to determine a sentence based on the superseding indictment in this case." [Cv-DE 43, p. 6]. He also argues that his understanding of the plea agreement "controls, and is construed against the government, any ambiguities." *Id.* Basically, Movant argues that the Government induced his guilty plea with its stipulation and then argued different facts at sentencing. *Id.* at pp. 6-7. Finally, he contends that he could not have made this

argument on direct appeal. *Id.* at p. 7.

First, for the reasons previously stated above in this Report and Recommendation, which need not be repeated, the Court finds that Movant's argument is procedurally barred because the Eleventh Circuit already denied Movant's appeal and affirmed the District Court's denial of Movant's motion to withdraw his guilty plea. *Ramdeo*, 682 F. App'x at 757–58. Movant could have and should have raised this issue on direct appeal and he has not established cause for failing to do so.

Second, even considering the merits of Movant's argument, paragraph 5 of the plea agreement states in relevant part that the U.S. Attorney's Office "reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not…." [Cr-DE 71, pp. 2-3]. The plain language of the plea agreement controls here. Movant reviewed the plea agreement and signed the Plea Agreement and Factual Proffer Statement [Cr-DE 71, p. 19], and the plain meaning of the plea agreement is evident. Therefore, Movant has not met his burden of establishing that the Government breached the plea agreement or committed any misconduct. The Court finds that the Government prosecutor did not breach the plea agreement or commit any misconduct.

f.   <u>Ground 6: Whether an Actual Conflict of Interest Adversely Affected the Performance of the Funk Firm or Mr. Funk</u>

Movant contends that he asked the law firm representing him at the time (the "Funk Firm") to pay a bill in the amount of $8,200 to a vendor that was owed money by one of Movant's companies. [Cv-DE 28, pp. 7-8]. The $8,200 was to come from fees paid by Movant to the law firm. *Id.* The law firm responded that it first wanted advice from the U.S. Attorney's Office and the FBI before making such a payment. *Id.* at p. 8. Movant argues that the Government might have

influenced Movant's counsel "in light of the conflict above to induce Mr. Ramdeo into a plea [sic] or there may be consequences based on Mr. Funk's email seeking advice." *Id.* Movant asserts that "the government believed the firm laundered funds which if fraudulently obtained could subject the Funk firm to criminal liability. The actual conflict of interest adversely affected the Funk firm's representation." *Id.*

In Ground 6 of his Petition, Movant refers to "the Funk Firm," "Mr. Funk," and "the Firm." Thus, Movant does specify in this argument that he is referring to the law firm of Funk, Szachacz & Diamond, LLC and Mr. Funk.

The Government argues that Movant's allegations are not "contained within the court record at any point" and that, "[e]ven if considered on the bare allegation by movant, there is no basis upon which to find a conflict, let alone ineffective acceptance of counsel." [Cv-DE 35, p. 15]. The Government also points out that "[m]oneys [sic] paid for representation guaranteed by the Sixth Amendment is excepted from laundering violations, though the government may seek to forfeit the money from counsel. This statute argues against defendant's claim." *Id.*

In reply, Movant alleges that the Government exchanged a number of emails with his trial counsel and has refused to release those emails to Movant. [Cv-DE 43, p. 10]. Movant also represents that the Government never affirmatively stated that it would not seek forfeiture of the attorney's fees Movant paid to his counsel, which created an actual conflict. *Id.*

"The right to effective assistance of counsel encompasses the right to representation free from actual conflict with defense counsel." *Buenoano v. Singletary*, 74 F.3d 1078, 1086 (11th Cir. 1996) (citing *Lightbourne v. Dugger,* 829 F.2d 1012, 1022 (11th Cir.1987), *cert. denied,* 488 U.S. 934 (1988)). "In order to establish an ineffective assistance of counsel claim arising from an alleged conflict of interest, a defendant 'must demonstrate that an actual conflict of interest

adversely affected his lawyer's performance.'" *Lightbourne*, 829 F.2d at 1023 (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980)). Therefore, in conflict of interest cases, courts must "first determine whether an actual conflict existed, and then…determine whether the actual conflict had an adverse effect on counsel's representation." *Buenoano*, 74 F.3d at 1086. The conflict must be actual and not merely hypothetical or speculative. *McConico v. Alabama,* 919 F.2d 1543, 1546 (11th Cir.1990). In order for a court to determine whether an actual conflict adversely affected trial counsel's representation, "[a] petitioner need not show that the result of the trial would have been different without the conflict of interest, only that the conflict had some adverse effect on counsel's performance." *McConico,* 919 F.2d at 1548.

"An 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests.'" *Aguilar-Garcia v. United States*, 517 F. App'x 880, 882 (11th Cir. 2013) (quoting *Freund v. Butterworth,* 165 F.3d 839, 859 (11th Cir.1999) (*en banc*) (citation omitted). "[A] speculative or merely hypothetical conflict of interest does not yield a Sixth Amendment violation. *Id.* (citing *Reynolds v. Chapman,* 253 F.3d 1337, 1342–43 (11th Cir. 2001).

Movant's vague and unsubstantiated claims of an alleged conflict of interest fail. Movant has not established an actual conflict of interest here. Movant's nonsensical argument attempts to manufacture a conflict of interest out of whole cloth. It was Movant who allegedly requested that his attorneys transfer money. There is no proof that any money was ever transferred, and nothing alleged by Movant rises to the level of any conflict of interest. His conflict of interest claim is purely theoretical, speculative and unsupported by any evidence whatsoever. Movant's mere speculation is insufficient.

g.   Ground 7: Whether Movant's Due Process Rights and Sixth Amendment Rights Were
Violated When the Government Allegedly Used Perjured Testimony to Obtain an Indictment
Against Movant and a Harsher Sentence Against Movant

Movant contends that he has a successful *Giglio*[4] claim and that his due process rights

were violated. [Cv-DE 28, p. 9]. He claims that James Hopwood and Melissa Armstrong, two

government witnesses, falsely testified, and the falsity of their testimony is supported by the

documentary evidence. *Id.* at pp. 9-10. Movant also accuses the Government of engaging in

"misconduct by presenting the fraudulent accounting without exercising any type of due care or

diligence in asserting that the evidence was false or accurate." *Id.* According to Movant, the

Government put these witnesses on the stand "to mislead the court." *Id.* at p. 11. Movant argues

that "[h]ad the prosecutor not made knowing use of perjured testimony, Mr. Ramdeo would have

received a less harsher [sic] sentence, not been indicted, nor sentenced on unreliable information."

*Id.*

The Government argues in response that the witnesses might have had a different view of

the facts than Movant, but this does not mean that their testimony was false. [Cv-DE 35, p. 18].

The Government also points out the District Judge credited the witness' testimony and "chose to

believe their information and not the false information provided by Ramdeo. This is not a basis to

overturn the conviction." *Id.*

The undersigned agrees with the Government that, at Movant's sentencing hearing, the

District Judge simply found the Government's witnesses to be more credible than Movant. *See*

Cr-DE 285, pp. 218-23; 238-40. Movant has not established that the witnesses committed perjury,

and there is no proof of perjury by these witnesses in the record. Nor has Movant shown how this

purported perjury caused him to be indicted or caused the District Court to sentence him to more

---

[4] *Giglio v. United States*, 405 U.S. 150 (1972).

time in prison than he would have otherwise received. Movant is once again merely speculating and has failed to meet his burden of proof. The Court finds that Movant's due process rights were not violated.

h.  Ground 8: Whether "Trial Counsel" Provided Ineffective Assistance When "Trial Counsel" Allegedly Advised Movant to Stipulate to the Sophisticated Means Enhancement Without First Conducting a Reasonable Pre-Plea Investigation

Movant contends that "[a]s a result of counsel's deficient performance in conducting a reasonable investigation prior to counseling the plea and stipulating to sophisticated means, Ramdeo would have received a less harsher [sic] sentence." [Cv-DE 28, p. 13]. He also argues that his admissions at his plea colloquy should not be used by this Court in determining whether Movant's counsel provided effective assistance. *Id.* at p. 12.

Movant refers to "counsel" and "trial counsel," but he does not specifically name the counsel he is complaining about in Ground 8 of his Petition. Since the law firm of Funk, Szachacz & Diamond, LLC, and its three attorneys, Alan Diamond, Keith Szachacz, and Kepler Funk, represented Movant during the time period when Movant pled guilty, the Court will assume that Movant's vague allegations refer to those defense counsel.

In response, the Government first argues that the appellate opinion already resolved this issue. [Cv-DE 35, p. 15]. The Government next contends that, even if the sophisticated means enhancement at § 2B1.1(b)(10)(C) of the Federal Sentencing Guidelines had not been agreed to in the plea agreement, it "was properly applied based upon the facts." *Id.*

In reply, Movant appears to argue that the facts known at the time of the plea did not support the sophisticated mean enhancement. [Cv-DE 43, p. 11]. He also maintains that the District Court's findings long after the guilty plea was entered into are irrelevant. *Id.*

The Court initially finds that this issue is procedurally barred because the issue of the

application of sophisticated means has already been determined by the Eleventh Circuit. The Court also finds that Movant is improperly attempting to re-litigate the issue by cloaking it as a claim for ineffective assistance of counsel. His claim thus fails on procedural grounds because the Eleventh Circuit already denied Movant's appeal and affirmed the District Court's application of the sophisticated means enhancement. *Ramdeo*, 682 F. App'x at 757–58. However, even if it were necessary to reach the merits of Movant's claim, his claim would fail.

Here, Movant has clearly not demonstrated that his counsel's representation fell below the constitutional standards per *Strickland*. This Court's review of this case leads to the inescapable conclusion that defense counsel from the Funk law firm were not ineffective in their defense of Movant. Movant chose to stipulate to the sophisticated means enhancement and there was clearly sufficient evidence to support that enhancement based upon Movant's underlying criminal conduct. Movant cannot meet the deficient performance prong or the prejudice prong. Movant has not established that his counsel's performance was deficient.

Additionally, even if Movant's counsel had not stipulated to sophisticated means in the plea agreement, the facts of the case clearly support the sophisticated means enhancement, and Movant's ultimate sentence would not have changed. Thus, Movant has not met his burden of establishing prejudice.

i.   <u>Ground 9: Whether "Trial Counsel" Was Constitutionally Deficient for Failing to Object to or Raise the Issue on Direct Appeal as to the Trial Court's Failure to Adhere to its Own Procedural Rules for Determining Loss and Restitution, or Alternatively, Whether the District Court Denied Ramdeo Due Process as a Matter of Law when it Failed to Follow the Rules Governing Loss and Restitution</u>

This jumbled argument of Movant apparently attacks more than one of his counsel, the Government, the Probation Officer, the victims, and the District Judge. As to his claim against his counsel, Movant argues that his "trial counsel" and "counsel" were constitutionally deficient for

31

failing to object, or raise the issue on direct appeal, regarding restitution. [Cv-DE 28, pp. 13-15]. Movant does not specify which counsel he is attacking in Ground 9.

Movant also argues that the U.S. Probation officer failed to comply with the applicable law, "failed to include a complete accounting of the losses to each victim as demonstrated by the PSR," and failed to "disclose prior to the hearing, the report of restitution for each victim." *Id.* at p. 14. Movant also contends that the victims failed to provide the requisite affidavits and that the Probation Officer failed to "provide notice and obtain the affidavits." *Id.*

And, Movant asserts that the District Judge denied him due process when he failed to follow the rules governing loss and restitution and imposed a substantially unreasonable, harsh sentence.

In response, the Government argues that the "issues of the amount of loss and the amount of restitution were preserved for appeal and were raised on appeal…Consequently, sentencing counsel could not have been ineffective for failure to preserve the issues and appellate counsel could not be ineffective for failure to address the issues on appeal." [Cv-DE 35, p. 17]. The Government also maintains that 18 U.S.C. § 3664 does not state that an "affidavit is required prior to ordering mandatory restitution for any victim; instead this is a means of obtaining restitution in addition to personally appearing at court or submitting a victim impact statement." *Id.* at p. 18. The Government explains that, in this case, "the victims submitted a victim impact statement and provided testimony through the chief financial officer and the treasurer as well as the chief executive officer to substantiate their losses. This is a permissible and appropriate manner to present information for the court to consider when setting restitution." *Id.*

In reply, Movant contends that "[t]record was incomplete as a failure of the trial court to adhere to the procedural rules which deprived Ramdeo of a meaningful review of the matter. The

Court[,] based on the government's affirmative misrepresentation[,] denied Ramdeo access to the documents necessary to create a factual record for appeal." [Cv-DE 43, p. 12]. Movant also argues that the District Court should have provided additional funding to have an accountant prepare an appropriate accounting. *Id.* Next, Movant asserts that the Probation Officer "neglected his responsibility to the Court by failing to provide notice to the victims and advise them of the opportunity to provide an affidavit certifying their losses." *Id.* at p. 16.

Movant later filed a Motion for Leave to Supplement with Additional Authority [Cv-DE 47], which the Court granted [Cv-DE 48]. Movant alleges that, during sentencing, the Government "presented a false accounting prepared by the victim to conceal their failure to pay payroll taxes." [Cv-DE 47, p. 1]. He accuses the Government of failing to exercise "even reasonable due diligence before filing this false information to mislead the Court by taking a calculator and doing some simple multiplication." *Id.* at p. 2. Movant claims that the "resulting error of the loss and restitution in this case is significant in that a proper accounting and utilization of testimony reduces it to half or to none at all." *Id.* Movant relies on *United States v. Sheffield*, 939 F.3d 1274 (11th Cir. 2019), for the premise that a defendant has the right not to be sentenced on the basis of inaccurate information and is not required to pay restitution when he or she is not responsible for such restitution. *Id.* at pp. 2-3. He also argues that the Court "used false information to determine both the loss and restitution resulting in an unreasonable and illegal sentence." *Id.* at p. 3.

In response to Movant's supplemental authority, the Government again argues that the issues of loss and restitution were litigated during the sentencing hearing and raised on direct appeal. [Cv-DE 49, p. 1]. The Government also contends that any additional grounds raised by Movant in the supplemental authority are untimely as they do not relate back to the original petition and are raised more than a year after the litigation became final—on October 15, 2018. *Id.*

at pp. 1-2. The Government next distinguishes the *Sheffield* case from Movant's case because, in Movant's case, the restitution "included interest, fines, attorneys [sic] fees and numerous other issues all addressed by the court during the hearing to impose sentence and in the direct appeal." *Id.* at p. 2. Finally, it asserts that Movant has alleged that certain relevant evidence was withheld by the Government, but he fails to describe this evidence and fails to explain how it would have affected the loss and restitution determinations. *Id.* at pp. 2-3.

In reply, Movant argues that the loss and restitution issues were never before the Eleventh Circuit "due to a lack of development of the record by the sentencing court." [Cv-DE 50, p. 2]. Movant also argues that the District Court and U.S. Probation improperly determined the loss in this case, that the interest, fees, etc., do not correlate to the loss and restitution amount, that the accounting prepared by the victims was false, and that the loss and restitution claims are incorporated into the Petition and are not untimely. *Id.* at pp. 2-3.

At the outset, the vague, hodgepodge of allegations in Ground 9 of the Petition, subsequently supplemented by Movant, appear to be lodged against "trial counsel," "counsel," appellate counsel, the U.S. Probation Officer, the victims, the prosecutor, and the District Judge. As to his ineffectiveness assertions, Movant first appears to be alleging that CJA counsel David Pleasanton was ineffective as to his restitution defense at the sentencing stage of this case. The Court notes that Movant proceeded *pro se* during certain points of his sentencing and prior thereto, so to the extent Movant was ineffective, he has only himself to blame. Mr. Pleasanton did represent Movant in relation to a portion of Movant's sentencing and in relation to restitution, so at least part of this claim is apparently lodged against him. Moreover, although Movant also claims that the issue was not raised on direct appeal when it should have been, Mr. Pleasanton did not represent Movant on direct appeal. Therefore, it appears that this portion of Ground 9 of the

Petition is additionally directed to CJA appellate counsel Richard L. Rosenbaum.

First, the Eleventh Circuit previously considered Movant's argument regarding loss and restitution. The Eleventh Circuit determined that Movant's "argument that the district court should have reduced the restitution amount by the tax abatements [P]romise received fails. Mr. Ramdeo does not explain how or why the district court erred." *Ramdeo*, 682 F. App'x at 758. The Eleventh Circuit further found that, "[i]n any event, it appears from the record that the district court did consider Mr. Ramdeo's argument that the total loss amount be reduced by a tax abatement figure. The district court gave Mr. Ramdeo 'the benefit of the doubt' and reduced the loss amount—and as a result, the restitution amount—by $742,000 (in addition to another reduction the district court granted in an effort to be fair)." *Id.* The Eleventh Circuit also found that Movant had "incorrectly relie[d] on the Victim and Witness Protection Act, 18 U.S.C. § 3663" in his appellate brief.

Because the Eleventh Circuit has already considered Movant's arguments on loss and restitution, the issues are procedurally barred absent a showing of changed circumstances. However, there are absolutely no valid changed circumstances. To the extent Movant has made any new sub-arguments since the Eleventh Circuit entered its opinion, "non-constitutional issues that could have been but were not raised on direct appeal" cannot be raised in §2255 petitions. *Delpeche*, 2011 WL 1752231, at *3; *see also Burke v. United States*, 152 F.3d 1329, 1131-32 (11th Cir. 1998). The restitution issue was fully addressed on direct appeal. Movant lost on direct appeal and fares no better here.

Second, the record clearly reflects that CJA Counsel David Pleasanton was not ineffective as to restitution issues in the District Court. Moreover, since the Eleventh Circuit considered and rejected Movant's restitution related arguments on direct appeal, it is obvious that Mr. Pleasanton properly preserved those restitution issues for appeal.

Third, to the extent that Movant claims that his counsel performed deficiently by failing to raise certain loss and restitution issues on appeal, that claim is apparently directed to CJA appellate counsel Richard L. Rosenbaum. However, the undersigned rejects this argument. Movant has not established deficient performance or actual prejudice. The restitution was considered and rejected by the Eleventh Circuit, and there was no ineffective representation by Mr. Rosenbaum.

Fourth, the substance of Movant's vague and jumbled argument is really more directed at the alleged failings of the District Judge, U.S. Probation, and the Government, rather than at his counsel's performance. However, the Eleventh Circuit affirmed the District Court, so there was no error by the District Judge or by the U.S. Probation officer upon which the District Judge relied in determining restitution. As to Movant's arguments against the government prosecutor, they are without any support and are rejected.

Fifth, the only real substantive argument that Movant can possibly bring at this time that is arguably not procedurally barred is his argument regarding the *Sheffield* opinion because this recent decision could possibly constitute "changed circumstances." In *Sheffield*, the defendant contested her restitution order, and the court agreed that it should be set aside because the "evidence the government submitted in support of its restitution request was admittedly and demonstrably inaccurate." 939 F.3d at 1276. The court further explained that "[w]here, as here, the appropriate restitution amount is definite and easy to calculate, the government cannot satisfy its burden of proof by relying on the oft-stated (but not always applicable) principle that restitution can be based on a reasonable estimate of loss." *Id.* The court did concede that a reasonable estimate of restitution is sometimes permitted. *Id.* at p. 1277. However, the court found that estimation should not be used when losses are "definite and easy to calculate." *Id.*

Here, the District Judge ordered Movant to pay $21,442,173 in restitution "to the victims

that have been identified of record in this case." [Cr-DE 285, p. 240]. The District Judge explained that the restitution amount would be made equal to the loss amount, even though the restitution amount should actually be higher. *Id.* at p. 220. The District Judge refrained from increasing the restitution amount since it did not believe that the victims would ever recover such a large sum of money from Movant. *Id.* The District Judge further explained that the $21,442,173 amount was based on the evidence at the sentencing hearing, and that Movant was being given the "benefit of the doubt that he may have provided some benefit to the company for negotiating a tax abatement for a tax penalty or interest that he didn't cause himself because of his criminal conduct and he is entitled to 100 percent of the penalty that was—showed as an expense as payment to him." *Id.* at pp. 219-220.

Having reviewed the entirety of the record in this case, and especially the sentencing hearing transcripts, the undersigned finds that the facts of this case are clearly distinguishable from those in *Sheffield*. Here, the appropriate restitution amount was indefinite and difficult to calculate. The District Judge properly calculated restitution, and the Eleventh Circuit affirmed him. Therefore, the Government and the Court acted properly in basing the restitution amount on a reasonable estimate of loss.

j.   Ground 10: Whether "Trial Counsel" Provided Ineffective Assistance During Sentencing When "Trial Counsel" Decided Not to Make a National Sentencing Disparity Argument

In Ground 10 of his Petition, Movant refers to "trial counsel" and "counsel" but does not specifically name the counsel. Since this claim relates to sentencing, it would appear to be directed at CJA counsel David Pleasanton during the time period Movant was not handling his own case *pro se*. Movant asserts that his counsel's sentencing memorandum was insufficient in that it did not include "readily available statistics from the U.S. Sentencing Commission website or any

general fraud case with the offense characteristics that are similar." [Cv-DE 28, pp. 15-16]. He argues that his sentence was too harsh and that, "[b]ut for counsel's ineffectiveness by not providing this information to the Court, Mr. Ramdeo would have received a less harsher [sic] sentence." *Id.* at p. 17.

In response, the Government argues that Movant should have raised this issue on direct appeal. [Cv-DE 35, p. 8]. The Government also contends that sentencing disparity was addressed in the memorandum in aid of sentencing counsel. *Id.* p. 16.

In Movant's reply, he again argues that nowhere in the sentencing proceedings or memorandum did Movant's counsel provide substantive analysis on disparity. [Cv-DE 43, p. 12].

First, Movant should have raised this issue on direct appeal and he has not established cause for failing to do so. Second, Movant has not established that his counsel's performance was deficient or that he suffered any prejudice. Movant's counsel submitted a sentencing memorandum and made argument during the sentencing hearing. Movant's contention that he would have received a lower sentence had his counsel made a national sentencing disparity argument is completely speculative and unsupported. Movant also cannot establish that his counsel's alleged failure to make such argument prejudiced him and resulted in a higher sentence.

k.   Ground 11: Whether "Trial Counsel" Was Ineffective for Failing to Prepare for the Hearing on Movant's Motion to Withdraw His Plea

In Ground 11 of his Petition, Movant refers to "trial counsel," "counsel," and "Mr. Ramdeo's attorneys," but he does not specifically name which counsel he is complaining was ineffective. Movant contends that he was "deprived of his legal materials" at St. Lucie County Jail during the pendency of his case and that his counsel should have sought a continuance of the withdrawal of plea hearing so Movant could have collected all of the evidence he believed was

necessary to his defense. [Cv-DE 28, p. 17]. Movant also argues that his counsel failed to review the evidence located at the FBI office—the "chronological logs, transcripts of phone calls, [and] the video surveillance from the jail"—prior to the hearing on the motion to withdraw Movant's plea. *Id.* Movant believes that, had counsel done so, counsel could have impeached the Government witnesses at the hearing and "shown just cause and fair reason to withdraw his plea." *Id.* at pp. 17-18.

In response, the Government first argues that Movant should have raised this issue on direct appeal. [Cv-DE 35, p. 8]. It next contends that trial counsel's preparation for the motion to withdraw plea hearing is evident on the docket—in the motion to withdraw the plea and in the transcript from the ensuing hearing. *Id.* at p. 12.

In reply, Movant contends that the jail logs establish that his various trial counsel gave false testimony during the hearing on his motion to withdraw guilty plea and that Movant's testimony during that hearing was credible. [Cv-DE 43, pp. 7-8]. According to Movant, transcripts of jailhouse phone calls and jail video surveillance should have been obtained before the hearing and should have been introduced at the hearing. *Id.* at p. 8. Movant next argues that the Government did not meet its *Brady* obligations, that there was missing discovery, and that there were material misrepresentations in the factual proffer. *Id.* at p. 9.

First, the undersigned finds that Movant's arguments are procedurally barred. "A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) (citing *Bousley v. United States*, 523 U.S. 614, 622, 118

S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998).[5] Here, Movant should have raised this issue on direct appeal and he has not established cause for failing to do so.

Second, since David Pleasanton represented Movant in relation to his motion to withdraw his guilty plea, it is assumed that Movant's allegations of ineffectiveness are directed to that counsel. However, the record clearly reflects that Mr. Pleasanton provided effective assistance of counsel to Movant in Movant's repeated efforts to withdraw his guilty plea. The record establishes that counsel's preparation for, and performance at, the hearing was effective and constitutionally sufficient in that it was within the wide range of professionally competent assistance. Movant merely alleges that his counsel failed to take certain actions in preparation for the hearing which actions Movant would have liked his counsel to perform. However, the record shows that counsel competently prepared for, and competently handled, the hearing on Movant's motion to withdraw his guilty plea.

Finally, Movant cannot establish that he was prejudiced by counsel's allegedly deficient performance. He has not and cannot establish any allegedly deficient conduct of his counsel which would have resulted in a different outcome. Movant's vague claims that his counsel should have obtained videotape, or allowed Movant to obtain his files, are speculative. Movant knowingly and voluntarily pled guilty. He knowingly and voluntarily signed a Plea Agreement and Proffer agreement. His multiple efforts to withdraw his guilty plea failed and the Eleventh Circuit affirmed the District Court's denial of his motion to withdraw his guilty plea. Movant was clearly not prejudiced by any asserted ineffectiveness of Mr. Pleasanton.

---

[5] The second exception is when a constitutional violation has probably resulted in the conviction of one who is actually innocent. This second exception is neither applicable nor even argued by Movant.

l.    Ground 12: Whether "Trial Counsel" Was Constitutionally Deficient by Failing to Develop the
       Record with Respect to the Obstruction of Justice Sentence Enhancement

Movant in Ground 12 of the Petition refers vaguely to his "trial counsel" and "counsel," but he does not specifically name the counsel. Since this claim refers to sentencing, however, it would seem that Movant is here complaining about his CJA counsel David Pleasanton in relation to his sentencing hearing during the period of time when Movant was not proceeding *pro se.*

Despite the District Judge's findings to the contrary, Movant argues that he did not provide any false testimony or documents. [Cv-DE 28, p. 18]. According to Movant, his counsel failed to obtain the evidence that would have proven his veracity. *Id.* Movant also asserts that the "prosecutor should not have been allowed to argue for an enhancement that she caused and invited." *Id.* at p. 19. Finally, Movant argues that he could not have made his ineffective assistance of counsel claim on direct appeal. *Id.*

The Government first argues that Movant should have raised this issue on direct appeal. [Cv-DE 35, p. 8]. It next argues that Movant's assertions are conclusory, unsupported statements and that Movant's counsel filed a sentencing memorandum "specifically addressing the various sentencing issues including the matter of obstruction of justice (docket entry 265). Ramdeo does not state what evidence counsel should have obtained to refute Ramdeo's recorded perjury before the court on two occasions." *Id.* at p. 16.

To the extent that Movant argues any malfeasance by the Government, the Eleventh Circuit explicitly considered Movant's argument that he did not obstruct justice and did not commit perjury, and the Eleventh Circuit then found that the District Court had committed no clear error. *Ramdeo*, 682 Fed.Appx. at 759. The findings of the District Judge as to Movant's obstruction of justice and perjury are fully supported by the record.

To the extent Movant is actually alleging ineffective assistance of counsel, he has not sufficiently established deficient performance or actual prejudice. He once again makes broad, vague accusations which lack any record support whatsoever. The record establishes that Movant's actions in the District Court were a textbook example of obstruction of justice.

## VII.   RECOMMENDATION TO THE DISTRICT JUDGE

In his rambling, vague, speculative and conclusory Petition, Movant Ramdeo blames everyone else but himself for his conviction, sentence and current predicament. He blames 1) the prosecutor and agents, 2) the government witnesses, 3) his numerous defense counsel at the district court level and at the appellate level, 4) the U.S. Probation Officer, 5) the victims, and 6) the District Judge. However, a very careful review of the entire record establishes that Ramdeo's shotgun claims are meritless, frivolous, and due to be denied on numerous procedural and substantive grounds as stated above.

Accordingly, the undersigned Magistrate Judge recommends that the District Judge DENY Sonny Austin Ramdeo's Second Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2255 [DE 28] in its entirety.

## NOTICE OF RIGHT TO OBJECT

A party shall file written objections, if any, to this Report and Recommendation with United States District Judge Kenneth A. Marra within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C). Failure to object to this Report and Recommendation within that time period waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions. 11th Cir.R. 3-1.

The Clerk of Court is **DIRECTED** to mail a copy of this Order to Sonny Austin Ramdeo, PID #80568-053, Low Security Correctional Institution – Allenwood, P.O. Box 1000, White Deer, PA 17887.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 1st day of July, 2020.

WILLIAM MATTHEWMAN
United States Magistrate Judge